# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| KHALED FARDJALLAH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 25-883-GBW |
| | ) |
| UBER TECHNOLOGIES, INC., | ) |
| | ) |
| Defendant. | ) |

Khaled Fardjallah, Newark, Delaware – *Pro se* Plaintiff

Jared Thomas Green, ESBROOK PC, Wilmington, Delaware – Counsel for Defendant Uber Technologies, Inc.

Lindsay M. Gonzalez, LITTLER MENDELSON, PC, Washington, DC – Counsel for Defendant Uber Technologies, Inc.

**MEMORANDUM OPINION**

December 15, 2025
Wilmington, Delaware

**WILLIAMS, U.S. District Judge:**

## I.  INTRODUCTION

On January 22, 2025, Plaintiff Khaled Fardjallah, of Newark, Delaware, initiated this civil action by filing a complaint *pro se* in the Superior Court of Delaware. (D.I. 1-1.) On July 16, Defendant Uber Technologies removed the case to this Court because the complaint raised federal questions under the Fair Labor Standards Act (FLSA). (D.I. 1.) Now pending before this Court is a motion to compel arbitration and stay this case filed by Defendant. (D.I. 4.) Upon review and consideration, this Court will grant Defendant's motion to compel arbitration and stay this case.

## II.  BACKGROUND

The complaint asserts claims of wrongful termination, retaliation, misclassification, and unfair business practices against Defendant. (D.I. 1-1 at 2.) Between 2015 and 2024, Plaintiff believes that he was misclassified by Defendant as an independent contractor under the FLSA and Delaware state law because Defendant "exercised control over [Plaintiff's] work, dictating fares, trip assignments, and earnings." (*Id.* at 2; *see also id.* at 3.) Additionally, Plaintiff believes that Defendant "wrongfully terminated [his] account based on false accusations and retaliated against [Plaintiff] for raising concerns about unfair earning and trip assignments." (*Id.* at 2.) Based on the foregoing, Plaintiff "seek[s]

1

$2.9 Million in damages, including compensation for economic losses, emotional distress, and punitive damages." (*Id.*)

In moving to compel arbitration and stay this case, Defendant have submitted copies of five of its software license, technology services, and platform access agreements from 2014 through 2022 (*see* D.I. 6-3, 6-4, 6-5, 6-6, 6-7), which were all agreed to and electronically signed by Plaintiff (*see* D.I. 6-8). According to the July 15, 2025 declaration of Senior Paralegal Daniel Chinchilla on behalf of Defendant, the 2022 platform access agreement applies to all drivers for Defendant in Delaware "between January 1, 2022 and present." (D.I. 6 at 2.) Per the declaration, "[a]ll of the agreements Plaintiff accepted, including the 2022 [agreement], contain an Arbitration Provision," (*id.* at 5) and Plaintiff "did not opt out of the Arbitration Provision contained in the 2022 [agreement] or any of the previous arbitration agreements" (*id.* at 5-6). Review of the 2014-2022 agreements confirms that all contain an Arbitration Provision with clear instructions for opting out. (*See* D.I. 6-3 at 14-20; D.I. 6-4 at 15-22; D.I. 6-5 at 20-28; D.I. 6-6 at 14-21; D.I. 6-7 at 15-28.)

### III. DISCUSSION

"[W]hen it is apparent, based on 'the face of the complaint, and documents relied upon in the complaint' that certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered

under a Rule 12(b)(6) standard without discovery's delay.'" *Guidotti v. Legal Helpers Debt Resol., LLC*, 716 F.3d 772, 776 (3d Cir. 2013) (internal citations omitted). In doing so, courts are "permitted to consider the substance of the contracts that ostensibly compel arbitration." *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 168 n.2 (3d Cir. 2014) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). "An arbitration clause may be deemed 'apparent' when the contract in which the arbitration clause appears is 'integral to' or relied upon in the complaint." *Lawson v. City of Philadelphia*, 2019 WL 934976, at *2 (E.D. Pa. Feb. 25, 2019).

With the Federal Arbitration Act ("FAA"), "Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms provided for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). This ensures that arbitration agreements "are enforceable to the same extent as other contracts." *Puleo v. Chase Bank USA, NA.*, 605 F.3d 172, 178 (3d Cir. 2010). When presented with an arbitration provision, this Court's task is to determine whether "a valid agreement to arbitrate exists between the parties and [whether] the specific dispute falls within the substantive scope of that agreement." *John Hancock Mut. Life Ins. Co. v. Glick*, 151 F.3d 132, 137 (3d Cir. 1998). When conducting this analysis, courts in the Third Circuit apply the standard for failure to state a claim under Rule 12(b)(6). *In re Remicade (Direct Purchaser) Antitrust*

3

*Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019)).

Plaintiff does not dispute that he entered Defendant's software license, technology services, and platform access agreements from 2014 through 2022, which included Arbitration Provisions, or that his claims fall within the substantive scope of the Arbitration Provisions. Rather, Plaintiff asserts broadly that the arbitration agreements were "procured through coercion, fraud, procedural unconscionability, and inapplicable scope concerning criminal, statutory, and public policy claims." (D.I. 9 at 1.) These, however, are legal conclusions that the Court does not credit in the absence of factual allegations from which they can be reasonably inferred. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

Moreover, because federal law recognizes a strong public policy in favor of arbitration, "'[n]othing short of a showing of fraud, duress, mistake' or some other compelling ground to invalidate a contract," "will permit a court to preclude the enforceability of an agreement to arbitrate." *Esaka v. Nanticoke Health Servs., Inc.*, 752 F. Supp. 2d 476, 481 (D. Del. 2010) (citations omitted). Relatedly, under Delaware law, a contract is unconscionable "if one of the parties lacks meaningful choice and the contract terms unreasonably favor one party over the other." *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del. 2009). "Courts have generally recognized that the doctrine of unconscionability requires both procedural

4

and substantive elements." *Maxwell v. Cellco P'ship*, C.A. No. 19-152-RGA, 2019 WL 5587313, at *7 (D. Del. Oct. 30, 2019) (citation omitted). "Superior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness. The traditional test is this: a contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other.'" *Gonzalez v. Citigroup*, C.A. No. CIV.09-017-SLR, 2009 WL 2340678, at *2 (D. Del. July 30, 2009).

In this case, Plaintiff has not shown that the contract in question meets the standard for invalidity or unenforceability. To the contrary, the evidence suggests that, on at least five occasions, Plaintiff signed agreements containing Arbitration Provisions without rejecting them, as he had a clearly-stated right to do. (D.I. 6-8; *see also* D.I. 6-3 at 14-20; D.I. 6-4 at 15-22; D.I. 6-5 at 20-28; D.I. 6-6 at 14-21; D.I. 6-7 at 15-28.) Thus, the Court finds that the Arbitration Provisions of the parties' agreements constitute valid agreements between the parties to arbitrate, and that Plaintiff's claims fall within the substantive scope of the Arbitration Provisions.

When a lawsuit involves an arbitrable dispute, and "a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). This raises the question of how long the proceedings should remain stayed. Thus, the Court will stay this case for ninety (90)

days to allow Defendant an opportunity to institute arbitration proceedings. Should Defendant fail to avail itself of arbitration within that time, the Court will then address the propriety of continuing the stay. Since this Court lacks the authority to compel arbitration outside of its district, *see Econo-Car Int'l, Inc. v. Antilles Car Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974), the 90-day status update must state whether Defendant has instituted arbitration within this district.

## IV. CONCLUSION

For the above reasons, the Court will grant Defendant's motion to compel arbitration and stay this civil action pending arbitration. (D.I. 4.)

An appropriate Order will be entered.

6